IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LARRY O. CAMPBELL                                                                           PLAINTIFF

                  v.                                   Civil No. 09-3074

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.       **Factual and Procedural Background**

       Plaintiff, Larry O. Campbell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"), pursuant to §§ 216(i) and 223(d) of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d) ("the Act").

       Plaintiff protectively filed his DIB application on August 22, 2007, alleging an onset date of April 1, 2000, due to post-traumatic stress disorder ("PTSD"), high blood pressure, depression, back pain, degenerative arthritis, rheumatoid arthritis, memory loss, and diabetes. Tr. 47-48, 122. Plaintiff's last date insured was December 31, 2003. Tr. 58. At the time of the alleged onset date, Plaintiff was fifty one years of age and possessed a bachelor of arts in history. Tr. 21,129, 149, 211. He performed past relevant work as a bookstore salesperson, receiving clerk, and a floor stocker. Tr. 42, 123, 131-134.

       Plaintiff's application was denied at the initial and reconsideration levels. Tr. 60-62, 65-66. At Plaintiff's request, an administrative hearing was held on March 23, 2009. Tr. 17-46. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance

of an attorney or other representative. Tr. 52, 92. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on May 1, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. 49-59. The Appeals Council denied Plaintiff's Request for Review on September 10, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

**II.     Medical History**

Plaintiff alleges he suffers from PTSD related to his war experiences in Vietnam. He was first treated in April 1999 at the Veteran's Administration ("VA") in Biloxi, Mississippi, for PTSD, aggression, and nightmares. Tr. 698-708. Upon presentation, Plaintiff reported flashbacks, nightmares, sleep deprivation, and aggression toward his family. Tr. 698. Upon examination, he was alert and oriented and his mood was euthymic with congruent affect. Tr. 698. Attention and concentration were unimpaired, and judgment and insight were good. Tr. 698. Plaintiff denied any suicidal or homicidal ideation. Tr. 698. Deron K. Coy, M.A., estimated Plaintiff's global assessment of functioning ("GAF") score at 60. Tr. 698. On May 24, 1999, Plaintiff was diagnosed with chronic PTSD and given a GAF score of 65. Tr. 701. He began an individual psychotherapy treatment plan to improve his insomnia and anger. Tr. 703. At the time of discharge, on August 2, 1999, Plaintiff's estimated GAF was 55. Tr. 708.

Plaintiff subsequently moved to Arkansas and attended group therapy for anger and depression at the VA in Fayetteville from August 10, 1999, through April 7, 2000. Tr. 205-253. On September 21, 1999, Plaintiff presented with a history of PTSD and depression, for which he was previously taking Paroxetine, but had recently switched to Sertraline. Tr. 217. He had served in the United States Air Force from 1966-1970 and from 1971-1987. Tr. 218. Plaintiff reported a volatile

temper and anger control problems since his return, which had caused family problems with his wife and children. Tr. 217. He admitted heavy alcohol usage from 1968-1974, but denied any current usage. Tr. 218. Upon examination, Plaintiff was alert and oriented times four. Tr. 218. He denied suicidal, homicidal, hallucinatory, and delusional material. Tr. 218. Richard Heckmann, M.D., noted that Plaintiff appeared upbeat, but was mildly agitated. Tr. 218. Dr. Heckmann assessed him with depressive disorder, not otherwise specified, with prominent anger symptoms. Tr. 218. He estimated Plaintiff's GAF at 60. Tr. 218. On December 21, 1999, Plaintiff stated he was "doing better" with both his temper and depression, but he still reported depression "a lot of the time" and was having trouble sleeping. Tr. 214-215. Dr. Heckmann estimated Plaintiff's GAF score at 58, prescribed a trial of Doxepin for sleep, and increased Plaintiff's dosage of Sertraline. Tr. 215. On February 24, 2000, Dr. Heckmann noted that Plaintiff's depression was improving on Sertraline and he was sleeping seven to eight hours a night. Tr. 206. At this time, Plaintiff's estimated GAF score was 63. Tr. 206.

     Plaintiff also received routine medical care at the VA. On January 25, 2000, Lindsey Miller, M.D., noted that Plaintiff had good control of his blood pressure with his medications. Tr. 210-213. At this time, Plaintiff was retired and farmed for a living. Tr. 211. He generally complained of elbow pain and PTSD, which had improved since he had been on medication. Tr. 211. At the time, Plaintiff was taking Sertraline, Tylenol, Lisinopril, and Naproxen. Tr. 211-212. Upon examination, Plaintiff moved all his extremities well, tendon reflexes were equal and active, and no pathologic reflexes were noted. Tr. 212. Dr. Miller assessed Plaintiff with hypertension, well controlled, degenerative joint disease, and noted a prior history of PTSD, nephrolithiasis or kidney stones, and heart palpitations related to stress. Tr. 212. Progress notes dated April 27, 2000, reveal that Plaintiff

was "trying to find a job." Tr. 231. On May 11, 2000, Plaintiff complained of left wrist pain. Tr. 230. X-rays revealed no fractures and very little, if any, soft tissue swelling. Tr. 257-259, 563-564. On July 5, 2000, Plaintiff was "doing well" and feeling better. Tr. 226. In September 2000, Plaintiff reported passing a renal stone, and urinalysis showed a few red blood cells. Tr. 315. He was assessed with calculus of kidney. Tr. 470. Otherwise, Plaintiff's condition was noted as stable. Tr. 315. As of November 20, 2000, Plaintiff was taking Acetaminophen and Naproxen for pain, Doxepin for sleep, Lisinopril for high blood pressure, and Sertraline for depression and temper control. Tr. 313.

On April 18, 2001, Plaintiff presented to the VA with complaints of heart palpitations, which were improving. Tr. 308, 457. Upon examination, Plaintiff's chest was symmetrical and his lungs were clear. Tr. 308-309. His heart size was normal, with regular rhythm and no rubs, murmurs, or gallops. Tr. 309. Dr. Miller noted an elevated LDL level of 173, and Plaintiff was instructed to follow a low fat diet. Tr. 307. On December 21, 2001, Plaintiff complained of rib pain and elbow pain with changes in the weather, but stated he was doing well otherwise. Tr. 303, 453.

On June 10, 2002, Plaintiff reported occasional left wrist pain, for which he wore a wrist splint. Tr. 300-301. X-rays of his left wrist revealed no significant abnormalities. Tr. 301. Plaintiff also reported increased allergies and knee pain, as he had been cutting hay. Tr. 301. Physical examination of his bones and joints revealed no deformities or effusions. Tr. 301. Peripheral pulses were normal and there was no evidence of edema. Tr. 301. Plaintiff had good muscle strength and coordination, and sensation and reflexes were within normal limits. Tr. 301. On September 17, 2002, Plaintiff reported to the VA with complaints of pain and stiffness in his knees and elbows, for which he was taking Naproxen and Tylenol. Tr. 294-295. X-rays of Plaintiff's right knee revealed

no gross abnormalities, with no evidence of fracture, malalignment, joint effusion, or joint space narrowing. Tr. 256. X-rays of Plaintiff's elbows revealed soft tissue swelling and large olecranon spurs consistent with probable bilateral olecranon bursitis. Tr. 257. However, there was no evidence of fracture, malalignment, or joint effusion, and only minimal degenerative changes were otherwise noted. Tr. 257. X-rays of Plaintiff's chest showed no active disease. Tr. 259. Dr. Miller assessed Plaintiff with tendinitis vs. arthritis and increased his dosage of Naproxen. Tr. 295.

On January 23, 2003, Plaintiff saw Dr. Miller at the VA for a routine appointment. Tr. 290-91. Plaintiff related a history of PTSD, renal stones, a "compression injury" to his left wrist which caused intermittent pain, and occasional elbow pain. Tr. 290. At this time, Plaintiff stated he was feeling "fairly well" and his knee had improved. Tr. 290. Additionally, his hypertension was well-controlled with Lisinopril. Tr. 290. Sallie Deakins, R.N., noted that Plaintiff denied depression and did not meet the criteria for major depressive disorder at that time. Tr. 292. He also denied any acute or chronic pain. Tr. 293. On August 18, 2003, Plaintiff stated he was "feeling well." Tr. 286. At this time, Ms. Deakins noted that Plaintiff's blood pressure and other conditions were stable and controlled. Tr. 286, 434. He was assessed with probable sub-acute prostatitis, for which he was treated with Bactrim. Tr. 434.

On October 25, 2007, Bill F. Payne, an agency specialist, determined that Plaintiff's physical impairments were non-severe as of the date last insured. Tr. 546. Similarly, on October 31, 2007, Dan Donahue, Ph.D., reviewed Plaintiff's mental treatment records and determined that his mental impairments were not "severe" within the definition of the Act. Tr. 547.

On March 10, 2009, Plaintiff went to Stephen R. Harris, Ph.D., for a consultative mental examination. Tr. 623-628. Plaintiff described his mental limitations as short-term memory loss,

trouble being around people, PTSD, and depression. Tr. 623. At the time, he was receiving 70% service-connected disability from the VA for his PTSD. Tr. 623. Upon examination, Plaintiff was oriented to person, place, and for the most part, reality. Tr. 625. He was pleasant and relaxed although his affect was guarded and slightly dysphoric. Tr. 624. He also appeared depressed. Tr. 624. Thought processes were spontaneous and well-organized. Tr. 625. Plaintiff's reported hobbies included hiking, outdoors, and photography. Tr. 625. Dr. Harris noted that Plaintiff was quite restless. Tr. 625. He denied current suicidal ideation, but admitted to passive homicidal ideation. Tr. 625. He also reported hearing voices in his head. Tr. 625. Dr. Harris estimated Plaintiff's intellectual level to be within the average range. Tr. 626.

On the Beck Depression Inventory, Plaintiff scored within the severe range of depression, as evidenced by sad feelings and difficulties with attention and concentration. Tr. 626. On the Beck Anxiety and Hopelessness Scales, Plaintiff scored within the mild range of anxiety and hopelessness. Tr. 626. Dr. Harris noted that Plaintiff's high level of depression and lower levels of anxiety and hopelessness could indicate a reactive depression. Tr. 626. On the Minnesota Multiphasic Personality Inventory-II ("MMPI-II"), Plaintiff's scores confirmed his diagnosis of PTSD. Tr. 626. Dr. Harris diagnosed Plaintiff with attention deficit/hyperactivity disorder ("ADHD"), not otherwise specified, and PTSD, chronic. Tr. 627. He estimated Plaintiff's GAF score at 52. Tr. 627. Dr. Harris noted that Plaintiff had difficulty maintaining concentration and might have difficulties in situations involving group interaction and stress. Tr. 627. He noted no problems in the areas of daily activities, persistence, and task completion. Tr. 627.

### III.  Applicable Law

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity (RFC) to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then

shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is declared not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

IV. <u>Discussion</u>

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since April 1, 2000, the alleged onset date. Tr. 54. At step two, the ALJ found that Plaintiff had the following medically determinable impairments: hypertension and depression/PTSD. Tr. 54-55. However, she found that Plaintiff did not have a "severe" impairment, i.e., an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months. Tr. 55-58. Thus, at step two, the ALJ determined that Plaintiff was not under a disability at any point from April 1, 2000, through December 31, 2003, the date last insured. Tr. 58-59.

On appeal, Plaintiff contends the ALJ erred by: (1) failing to consider all of his impairments in combination; and (2) improperly dismissing his subjective complaints of pain. *See* Pl.'s Br. 2-19.

A. <u>Combined Impairments</u>

Plaintiff first argues that the ALJ failed to properly consider all of his impairments, both singly and in combination, in making her step two severity determination. *See* Pl.'s Br. 16-19. Specifically, Plaintiff asserts that the ALJ failed to consider the full impact of his PTSD, depression, knee and elbow pain, carpal tunnel syndrome, and degenerative joint disease. *See* Pl.'s Br. 16. We disagree.

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In determining whether an individual's physical or mental impairments render him disabled, the ALJ shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be deemed severe. 42 U.S.C. 423(d)(2)(B). The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have "no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996). Although the claimant has the burden of establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness*, 250 F.3d at 605.

Substantial evidence supports the ALJ's severity determination. The overwhelming evidence suggests that, although Plaintiff's condition *subsequently* deteriorated after his date last insured, he did not suffer from a severe impairment or combination of impairments during the relevant time period. *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995) (per curiam) (requiring claimant to show she was disabled before date last insured); *See Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (court will only consider the claimant's medical condition as of the date last insured).

Although Plaintiff suffers from PTSD and depression, the medical evidence from the relevant time period suggests that these conditions greatly improved with the use of medication and therapy. Tr. 205-253, 698-708. Most notably, during the relevant time period, Plaintiff's GAF scores were consistently between 55 and 65, with an estimated GAF score of 63 at the time he discontinued

therapy at the VA.[1] Tr. 206.  On September 21, 1999, Richard Heckmann, M.D., diagnosed Plaintiff with depressive disorder with prominent anger features, but could not confirm PTSD.  Tr. 246.  On December 21, 1999, Dr. Heckmann noted that Plaintiff's depression and temper were doing better on medication.  Tr. 214.  Similarly, on January 21, 2000, Bobby J. Farrow, M.D., noted that Plaintiff's depression had improved.  Tr. 235.  Progress notes dated February 24, 2000, indicate that Plaintiff improved while taking Sertraline and Doxepin, and was sleeping seven to eight hours a night at that time.  Tr. 206, 215; *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (an impairment is not disabling if it can be controlled by medication or treatment).  Moreover, on January 23, 2003, Sally Deakins, R.N., noted that Plaintiff did not meet the criteria for major depressive disorder.  Tr. 292.  Plaintiff's consistent improvement with therapy and medication support the ALJ's determination that his PTSD and depression were not "severe" within the meaning of the Act.[2]  *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996) (conditions controlled with medication and diet are not medically severe).

Similarly, Plaintiff's alleged physical impairments do not rise to the level of "severe" under the Act.  Plaintiff's physicians consistently noted that his high blood pressure and cholesterol were controlled with medication and diet.  Tr. 210-213, 286, 290, 307, 434; *Wilson*, 76 F.3d at 241.  Moreover, although Plaintiff complained of intermittent wrist pain and carpal tunnel syndrome,

---

[1] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally the person is functioning pretty well and has some meaningful interpersonal relationships.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., 2000).

[2] The ALJ properly considered the VA's decision finding Plaintiff 50% or more disabled due to service-connected PTSD.  Tr. 56, 610.  The standards for determining disability under the VA guidelines are distinct from the rules governing disability under the Act.  Tr. 56; *See* 20 C.F.R. § 404.1504 (a determination made by another agency that a claimant is disabled is not binding on the Commissioner); *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (ALJ not bound by VA disability determination).  Thus, although the VA's determination is a factor to be considered, it is by no means dispositive as to the issue of disability.

physical examination revealed no deformities or effusions of the bones and joints and multiple x-rays of Plaintiff's left wrist revealed no fractures and very little, if any, soft tissue swelling. Tr. 230, 257-259, 301, 563-564.

Additionally, although Plaintiff complained of occasional knee pain, x-rays of his right knee revealed no gross abnormalities, with no evidence of fracture, malalignment, joint effusion, or joint space narrowing. Tr. 256. Physical examination revealed no deformities or effusions, and good muscle strength and coordination. Tr. 301. Sensation and reflexes were within normal limits. Tr. 301. On January 23, 2003, Plaintiff stated that he was feeling "fairly well" and his knee pain had improved. Tr. 290.

Plaintiff also complained of intermittent elbow pain. Tr. 211, 257, 294-295. Upon examination, Plaintiff moved all his extremities well, tendon reflexes were equal and reactive, and no pathologic reflexes were noted. Tr. 212. Dr. Miller assessed Plaintiff with degenerative joint disease. Tr. 212. X-rays of Plaintiff's elbows, dated September 17, 2002, revealed soft tissue swelling and large olecranon spurs consistent with probable bilateral olecranon bursitis. Tr. 257. However, there was no evidence of fracture, malalignment, or joint effusion, and only minimal degenerative changes were otherwise noted. Tr. 257. Dr. Miller assessed Plaintiff with tendinitis vs. arthritis and increased his dosage of Naproxen. Tr. 295. Various follow-up notes reveal that Plaintiff's pain was weather-related, he was "feeling well," and his medical conditions were stable and controlled. Tr. 286, 290, 303, 434, 453.

The medical evidence of record from the *relevant time period* simply does not support Plaintiff's contention that he suffered from an impairment or combination of impairments causing more than a minimal impact on his ability to work. Moreover, Plaintiff's argument that the ALJ

failed to consider all of his impairments in combination is conclusory and lacks merit. The ALJ specifically stated that she considered all of Plaintiff's impairments, both singly and in combination, and she discussed Plaintiff's medical records in great detail. Tr. 55. For the aforementioned reasons, substantial evidence supports the ALJ's step two analysis.

B. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ improperly dismissed his subjective allegations of pain. *See* Pl.'s Br. 16-19. We disagree.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

The ALJ properly considered and dismissed Plaintiff's subjective complaints. Most notably, Plaintiff reported extensive daily activities during the relevant time period. The records reflect that Plaintiff engaged in such activities as raising cattle, hiking, spelunking, rock climbing, heavy lifting, and owning/maintaining a resort during the relevant time period. Tr. 31, 57, 322, 399, 430, 453, 516.

Such activities are simply inconsistent with the amount of pain Plaintiff alleges. *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living); *Gallus v. Callahan*, 117 F.3d 1061, 1063-64 (8th Cir. 1997) (claimant's reported activities included playing with her pets, taking care of her horse, gardening, target shooting, and taking care of her car); *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994) (activities included walking, caring for livestock, doing laundry, cooking, and shopping). Moreover, as previously discussed, Plaintiff's alleged impairments improved with treatment and medication. *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication). Finally, the objective evidence of record simply does not support the alleged severity of Plaintiff's impairments during the relevant time period. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Plaintiff's extensive daily activities and improvement with treatment and medication cast doubt on the validity of his testimony. Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted his subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

**V.    Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision, and recommends that the decision be affirmed, and Plaintiff's

case be dismissed with prejudice.  **The parties have <u>fourteen</u> days from receipt of our Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1),** *amended by* **Pub. L. 111-16, §§ 6(1), 7, 123 Stat. 1607, 1608-09 (2009).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

      ENTERED this 15th day of April 2011.

                                              */s/ J. Marschewski*
                                         HON. JAMES R. MARSCHEWSKI
                                         CHIEF U.S. MAGISTRATE JUDGE